### In re SCHWARTZMAN.

### Ex parte PRINGLE.

(District Court, D. South Carolina. February 12, 1909.)

1. BANKRUPTCY (§ 301*) — ADMINISTRATION OF ESTATE—POWERS OF COURT—INJUNCTION.

A court of bankruptcy has power to restrain a landlord from interfering with the possession by a trustee of a store occupied by the bankrupt under an unexpired lease, and which contains a valuable stock of goods, until the trustee has had a reasonable time to dispose of the same, where they cannot be removed without serious loss to the estate, and on giving of a bond to protect the landlord from loss.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 464; Dec. Dig. § 301.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. BANKRUPTCY (§ 255*) — ADMINISTRATION OF ESTATE — ACCEPTANCE OF LEASE BY TRUSTEE.

Under Civ. Code S. C. 1902, § 2416, which provides that "no parol lease shall give a tenant a right of possession for a longer term than 12 months from the time of entering on the premises and all such leases shall be understood to be for one year unless it is stipulated to be for a shorter term," a bankrupt who went into possession of a store under a verbal agreement that he should pay $60 per month, without anything said as to length of term, was entitled to hold the premises for one year, and his trustee has the right to complete such year on payment of the monthly rent.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 352; Dec. Dig. § 255.*]

In Bankruptcy. On motion to vacate injunction.

Mordecai, Gadsden, Rutledge & Hagood, and Henry Buck, for trustee and creditors.

M. C. Woods, for landlord.

BRAWLEY, District Judge. The petitioner, Walter Pringle, filed his petition in this court December 30, 1908, setting forth, among other things, that he had been duly elected trustee of the above-named bankrupt December 28, 1908, and had duly qualified as such; that the principal asset of the said bankrupt estate consisted of a stock of goods, wares, and merchandise in the city of Marion, contained in a large, newly erected store or building in said city; that said stock of goods was entirely new, having been first opened about the 1st day of September, 1908; and the petition averred that said storehouse and building was built and fitted expressly for the use of the said business of the said Schwartzman, and was leased by the owner thereof, H. C. Graham, to said Schwartzman for the term of one year from the 1st day of September, 1908, to the 1st day of September, 1909, with the privilege of certain annual renewals.

The petitioner further stated that he was advised that the owner of said property, the said H. C. Graham, claimed the right to possession of the premises on the 1st day of January, 1909, and averred that irreparable loss and damage would follow if the stock of merchandise was removed from the premises before the sale could take place, and that the same could only be advantageously sold upon said premises, and that a sale could not take place at an earlier date than January 25, 1909.

Upon the hearing of said petition, which was duly verified, it was ordered that H. C. Graham should be restrained until the further order of the court from instituting any action or proceeding, or taking any steps to interfere with the possession of the said trustee, and the trustee was ordered to file with the clerk a bond in the sum of $1,000, with surety, conditioned to save the said H. C. Graham harmless from all costs and damages which might accrue by reason of the issuance of said restraining order. It was further ordered that the said H. C. Graham have leave to apply for a revocation or modification of this order at any time upon giving one day's notice to the counsel for the petitioner.

It appears that the petitioner advertised a sale of the stock of merchandise for January 25, 1909, and that on that day a bid was made for the purchase of said stock of merchandise which was acceptable to the trustee and to the creditors, but the purchaser has failed to comply with his bid, and he is not within the jurisdiction of this court, and counsel for petitioner has stated to the court that they are uncertain whether the sale can be consummated, and that it may be necessary for the petitioner, in the execution of his trust, either to readvertise the same, or to proceed to sell the same at retail. Counsel for H. C. Graham, upon a notice served February 6, 1909, moved before me February 8, 1909, for an order dissolving the injunction, upon several grounds therein stated: (1) Because the injunction herein was improvidently granted, in that the facts averred in the fourth paragraph of the petition, upon the hearing of which his honor issued the order of injunction, are false and without foundation in fact. (2) Because the injunction herein was improvidently granted, in that there are no peculiar facts as stated in the petition warranting a court of equity in interfering by injunction, but, on the contrary, the stock of goods in question consists of clothing, dry goods, shoes, and men's and women's furnishing goods, in no sense liable to breakage or injury by removal. (3) Because the injunction herein was improvidently granted, in that, while respondent has bowed deferentially to the mandate of the court, he deferentially submits that the order of this honorable court herein deprives him of the possession and enjoyment of his property without due process of law, and further prohibits him from invoking the law of the land, whereby the possession and enjoyment of his property is secured to him. The fourth and fifth are amplifications of the above-stated grounds.

Upon the facts stated in the petition, which was duly verified by the person known to the court as a man of character and discretion, there can be no doubt that it was the right and duty of the court to grant the restraining order prayed for. The petitioner, but a few days before, had been selected by the creditors as trustee of an estate consisting of a stock of merchandise valued at $25,000, stored in a building specially built for the bankrupt, with fittings especially adapted, at considerable expense, for their proper display, and he was notified that the owner of the building would require him to remove the same within two or three days. It was obvious that great loss and damage would follow a precipitate removal. In these circumstances it was the duty of this court as a court of equity, while giving full recognition to the legal right of the landlord, to so regulate the time and manner of its enforcement as not to cause unnecessary loss to others. Immediate ejection from the premises would have entailed great depreciation of the value of the bankrupt's estate, and, if the bankrupt had a lease of the premises for 12 months from September 1, 1908, as averred in the petition, it was the duty of the trustee to determine whether or not it was for the benefit of the creditors to assume said lease. If a sale upon the premises was necessary to avoid great loss, it was obviously the duty of the trustee to conduct the sale there, and it seems equally clear that it was the duty of the court to relieve him

from the coercion of a situation where precipitate action might have resulted in irreparable damage, and such delay as might be reasonably necessary seems clearly within the power of the court of equity to grant. The bond for $1,000 conditioned for the payment of any costs or damages that might be sustained by the landlord by reason of the restraining order seemed adequate to provide for any pecuniary compensation that was necessary, there being nothing in the circumstances of the case which indicated that the sum of $1,000 would not be ample to compensate the landlord for any loss or damage that might be sustained by him. If authority is needed to support what appears to accord with common sense and common justice, it may be found in Re Chambers, Caldwell & Co. (D. C.) 98 Fed. 865.

Upon the hearing of the motion to dissolve the injunction, affidavits were submitted which made it clear that the allegations in the fourth paragraph of the petition, that Graham had leased the premises to Schwartzman for the term of one year from the 1st day of September, 1908, to the 1st day of September, 1909, with privilege of certain annual renewals, were incorrect. There was no written lease for any period, and that brings up a very nice question, as to what Schwartzman's rights were in the premises, for the trustee is entitled to them and no more. It appears that Schwartzman had been for some years a merchant in Marion, and that he conceived the idea of establishing a department store in that city; that Graham agreed to erect, and did erect, a building especially for that purpose, which was ready for occupancy about September, 1908; that on or before that day Schwartzman bought a stock of merchandise of the value of nearly $50,000; that he fitted up this building especially for that purpose, expending for fixtures alone what is now valued at $1,000; and that he entered into possession about September 1, 1908, and brought there a very large and valuable stock of merchandise, and that the building was admirably adapted for the proper display of such goods, and that there is no building of like character in such city. Schwartzman became involved in financial difficulties in the autumn of the same year, and had been adjudicated a bankrupt. Upon his examination before the referee in bankruptcy, before this question arose, after testifying that this store had been built for him by Mr. Graham, he was asked:

"Q. How much rent do you pay? A. $60 per month. Q. How long did you agree to take it from him? A. He did not give me any lease; he is a man who says, 'Here is the store; take it; stay as long as you want.' Q. He never told you to get out? A. No, sir: I could stay there as long as I wanted."

Affidavits have been submitted on this motion, from which it appears that Schwartzman desired a lease for five years, and that Graham refused to give him such lease, but let him into possession under an agreement that he was to pay $60 per month, and there does not seem to be any room for doubt that Graham understood that he was renting this building by the month at the rate of $60 per month, and Graham's contention now is that he had a right to eject his tenant at the end of any month, with or without reason. That parties may make their own terms as to the tenancy of real estate

cannot be disputed, and it is the duty of the courts to enforce such contracts, whether they seem reasonable or unreasonable; but when courts are called upon to decide upon contracts of this nature, they are bound to inquire as to what the real contract was, and whether, as to it, there was that agreement of minds that must lie at the base of every contract, and, where parties themselves have not reduced their agreement to writing, they inquire into the circumstances attending the alleged agreement. Schwartzman has testified that there was no agreement as to how long he was to keep the premises; that he was to stay as long as he wanted to, paying $60 a month rent. The affidavit of Graham's attorney is that, in consequence of a conversation between himself and Graham, in August, 1908, he went to D. Schwartzman and told him that Mr. Graham would decline to lease his store to him for five years or any other period, but would lease the same to him by the month at $60 per month—

"that then and there this deponent, acting as attorney or agent for H. C. Graham, entered into a contract or agreement, the same being parol, whereby D. Schwartzman rented the store in question at $60 per month; that such was the whole contract or agreement, and nothing was said about renting for a year, 12 months, or until September 1, 1909."

These affidavits were prepared to meet the allegations of the petition, which set forth a specific agreement of a lease for one year, from September 1, 1908. It will be observed in the affidavit of Graham's attorney that, although he says that Graham would only lease by the month, in stating the contract he says that "Schwartzman rented the store in question at $60 per month; that such was the whole contract or agreement," and nothing was said as to the duration of the lease. That Schwartzman understood that he was to stay as long as he wanted, paying $60 per month rent, is clear from his testimony. This is in accordance with the probabilities. The store had been built for him especially by Graham. He was moving into it a large and valuable stock of goods; he had fitted it up at his own expense, at considerable cost, the fixtures alone being now valued at $1,000. It is incredible that a man of any common sense would make this large expenditure for fixtures, and would put into the building a large and valuable stock of merchandise, if he understood that he could be turned out at the end of a month. Graham had already shown his friendliness by erecting the building for him, and evidently Schwartzman trusted to the continuance of such friendly relations, and believed that he could stay there as long as he wanted to by paying the monthly rental.

I must conclude, therefore, that there was no definite agreement between Graham and Schwartzman as to the duration of the lease; that the only definite stipulation between them was the payment of $60 per month. That Graham believed that it was a rental from month to month, and that he had a right to eject his tenant at the end of any month, is not unlikely; but his understanding does not suffice to make a contract, unless the other party agreed to the same thing. That Schwartzman agreed that he could be turned out at the end of any month, that his business should be broken up, and that the fixtures upon which he had expended large sums should be

rendered valueless, is inherently improbable. Agreements of that nature must be supported by strong proofs. Schwartzman's testimony, given ante litem motam, is that he could stay in the store as long as he wanted to. That it was the understanding that the duration of the tenancy was indefinite agrees with all the probabilities of the case. It appears that he took possession in September; that he did not pay the monthly rental at the end of each month, but at the end of December, when bankruptcy supervened, all of the rent from the beginning of the tenancy was due, and the trustee has paid it. Schwartzman's testimony is that he received no notice from the landlord to move, notwithstanding the nonpayment of the rent. The statute of frauds provides that "all leases and terms for years by parol shall have the effect of leases at will only," and in South Carolina the law fixes the rights of parties in all cases of tenancies by parol, where there is no express stipulation as to the length of the term. Most of the cases have turned upon what was a necessary notice to quit. Such was the case of Godard v. Railroad Company, 2 Rich. Law (S. C.) 346, where the court says:

"Tenancies at will, from which tenancies from year to year are derived, are said to have been originally held by the will of the lessor; but from a very early period it has been the law that they were held at the concurrent will of both lessor and lessee—that they might be determined by the will of either party."

Reference is then made to the third section of the act of 1817 (6 St. at Large, p. 67), providing that:

"No parol lease shall give tenant a right of possession for a longer period than twelve months, and that all such leases shall be construed to be for one year unless it be stipulated for a shorter time."

The court then adverts to the mischief that would follow if tenancies should be unexpectedly determined, and says:

"Ignorance and remissness would frequently leave one of the parties in the power of the other. The law which implies a tenancy for a definite period when it has not been agreed on by the parties, and requires notice to dissolve the tenancy, is best suited to the habits of society, and is necessary to prevent surprise and oppression."

—and concludes:

"That in order to put an end to a tenancy from year to year there must be three months' notice to quit, ending at the expiration of the year."

In Wilson v. Rodeman, 30 S. C. 210, 8 S. E. 855, the lease was verbal for $30 per month, but indefinite as to time, nothing being said as to how long it was to continue. The defendant entered into possession June 1, 1882, and paid his rent regularly every month. On October 1, 1884, the rent was raised to $40 per month, and the plaintiff claimed that at that time the character of the tenancy was changed by agreement, that thereafter it was to be a yearly lease, but this the defendant denied. On September 30, 1887, the defendant gave written notice that he would vacate the premises by the 1st of January, 1888, and he did vacate them before the beginning of the year 1888, leaving his rent unpaid for the month of December, 1887, and February 10, 1888, the plaintiff brought suit before a trial justice

for $80 rent, $40 due for December, and including $40 for the month of January, 1888, alleging that the tenancy was yearly. The defendant admitted owing $40 for the month of December, and tendered the same. The trial justice gave judgment in favor of the plaintiff to the amount tendered, and the circuit court affirmed said judgment. The Supreme Court affirmed this judgment, and in its opinion says:

"As we understand it, there are only two questions in the case, one of fact as to the character of the tenancy, whether it was indefinite as to its termination, and therefore from year to year, and if so, whether, as matter of law, the end of the calendar year should be fixed for its termination. There seems to be no dispute that the first rental, in June, 1882, was indefinite as to time, except requiring the rent monthly; that under the statute was up to June, 1883, and, the defendant having held over, it became a tenancy from year to year."

In Hillhouse v. Jennings, 60 S. C. 399, 38 S. E. 599, the court considered the statute of frauds in its relation to tenancies under parol leases, and reviewed the decisions, announcing the following conclusions:

"From the statutes and the decisions interpreting them, the following principles may be deduced:

"(1) A parol lease gives a tenant a right of possession for a term of 12 months from the time of entering on the premises. If the lease is for a term less than 12 months, of course the tenant would only be entitled to hold possession for the time stipulated after entering into possession of the premises.

"(2) A parol lease undertaking to give a tenant a right of possession for a longer term than 12 months is within the statute of frauds; nevertheless, if the tenant is permitted to enter on the premises by virtue of such agreement, he should have the right of possession for 12 months from the time of such entry, but no longer.

"(3) A parol lease under which a tenant enters upon the premises shall, after the term of 12 months from the time of entering on the premises, have the effect of an estate at will.

"(4) If a landlord refuses to permit a tenant to enter on the premises under a parol lease no action shall be brought to charge him upon such contract, even if the lease is not for a term exceeding 12 months."

Section 2416 of the Civil Code of 1902 of South Carolina, relating to landlord and tenant, is as follows:

"No parol lease shall give a tenant a right of possession for a longer term than 12 months from the time of entering on the premises, and all such leases shall be understood to be for one year, unless it be stipulated to be for a shorter term."

My conclusion is that Schwartzman, having entered into possession of the premises September 1, 1908, under a parol lease, and there being no express stipulation as to the duration of the tenancy, was entitled under the law of South Carolina to a right of possession for 12 months from the time he entered on the premises, and that the petitioner, Pringle, as trustee in bankruptcy of his estate, is entitled to hold the premises until September 1, 1909, paying the monthly rental of $60 per month, and motion to dissolve the injunction is denied.