**In re PARAMOUNT PUBLIX CORPORATION.**

**MADISON–TOLEDO CO. v. PARAMOUNT PICTURES, Inc. (formerly Paramount Publix Corporation).**

**No. 357.**

Circuit Court of Appeals, Second Circuit.
July 23, 1936.

Fletcher & Brown, of New York City, and Williams, Eversman & Morgan, of Toledo, Ohio (Orville C. Sanborn, of New York City, and Harry W. Morgan, of Toledo, Ohio, of counsel), for Madison-Toledo Co.

Root, Clark, Buckner & Ballantine, of New York City (Henry J. Friendly, of New York City, of counsel), for Paramount Pictures, Inc.

Cadwalader, Wickersham & Taft, of New York City, and James B. Benedict, of Cincinnati, Ohio, for Hulbert Taft, amicus curiæ.

Riegelman, Hess & Hirsch, of New York City, and Cannon, Speith, Taggart, Spring & Annat, of Cleveland, Ohio, for Theodore De Witt, receiver of Hotel Hollenden Co., amicus curiæ.

Before MANTON, SWAN, and CHASE, Circuit Judges.

CHASE, Circuit Judge.

On June 12, 1926, the debtor, whose corporate name was then Famous Players-Lasky Corporation, leased a piece of real estate in Toledo, Ohio, of the appellant, Madison-Toledo Company, for the term of fifteen years at a stipulated rental. The lease contained no clause providing for continued liability of the lessee to the lessor in the event of re-entry by the lessor after default nor for the collection by the lessor in any event of subrents. On the same day, in accordance with the terms of the lease, the debtor assigned it to the

Huron Street Realty Company, whose name later became Toledo-Paramount Corporation, a wholly owned subsidiary of the debtor. The assignee assumed all the obligations of the debtor under the lease, but the debtor was not released by the appellant from its obligations thereunder. And likewise on the same day the assignee sublet the premises to the Toledo Casket Company, which went in possession.

With the exception of taxes to the amount of $476.07 payable in December, 1932, everything due under the lease to the debtor was paid up to January 1, 1933. Thereafter no payments due under the lease were made.

On January 26, 1933, equity receivers were appointed for the debtor in a receivership suit brought in the District Court for the Southern District of New York. On March 14, 1933, the debtor filed a voluntary petition in bankruptcy in the same court and was adjudicated. Trustees in bankruptcy were elected April 17, 1933. And on June 16, 1934, a petition for reorganization filed against the debtor under section 77B of the Bankruptcy Act (11 U.S.C.A. § 207) was approved by the same court, and the trustees in bankruptcy were duly appointed trustees under the 77B petition. On August 31, 1933, they, as trustees in bankruptcy, had rejected the head lease dated June 12, 1926. Meanwhile Toledo-Paramount Corporation had been sued in equity in the District Court for the Northern District of Ohio, and on February 6, 1933, equity receivers had been appointed for it by that court. One of them, Al E. Reuben, was a real estate broker who had been the local agent in Toledo who had managed the leased property for Toledo-Paramount Corporation for a commission and who had collected the subrents from the Toledo Casket Company. Previously, Reuben had unsuccessfully endeavored in July, 1932, in behalf of Toledo-Paramount Corporation and the debtor to obtain more favorable rental terms from the appellant, who had made the counter proposal that it be permitted to collect the subrents. This was refused by the debtor.

On January 30, 1933, shortly after equity receivers of the debtor were appointed, the appellant requested Reuben to make arrangements permitting it to collect the subrents. Pursuant to that request Reuben communicated with the real estate department of the debtor in New York and was advised by an attorney acting for it that there was no objection to the paying over to the appellant the January subrent if it had been collected, provided nothing was done to prejudice the right of the receivers to disaffirm the lease. Further negotiations resulted in an arrangement, reached after receivers for Toledo-Paramount Corporation had been appointed, whereby the appellant collected with the consent of those receivers subrents to the amount of $1,333.33 which were due for the months of January and February at the time those receivers were appointed. This was upon the understanding that such collections should be applied as credits upon the rent due or to become due under the head lease. On May 2, 1933, with like consent on the part of the receivers of Toledo-Paramount Corporation and for like application on the head lease rent, the appellant collected $666.66 in subrent which became due after the consenting receivers had been appointed; and thereafter collected additional subrent as it became due. On November 16, 1933, the receivers of Toledo-Paramount Corporation, having obtained leave so to do from the court of their appointment, disaffirmed the lease, and their consent to the collection of the subrents by the appellant was approved. Toledo-Paramount Corporation has since been liquidated, and a first and final dividend of 10 cents on the dollar has been paid its creditors.

The appellant filed a proof of claim in the bankruptcy proceedings of the debtor for a balance of rent under the head lease claimed to be due on March 14, 1933, when the petition in bankruptcy was filed, and for damages. Objections to the claim were filed in so far as it related to what was not due at the time the petition in bankruptcy was filed on the ground that such portion was not provable, and appellant, acquiescing in that interpretation of the law, did not press its claim to that extent. The balance due on March 14, 1933, was agreed to be $782.37, for which amount the claim was allowed without prejudice to any claims the appellant might have against any one other than the estate of the bankrupt or its trustees.

After the 77B petition was approved, the appellant filed its claim in those proceedings against the debtor, (1) for the $782.37 previously allowed in bankruptcy; (2) for a balance of $2,055.34 for rent due on August 31, 1933, when the bankrupt's trustees rejected the lease; and (3) for the injury caused by the rejection. The debtor's trustees objected to the allowance

of any part of the claim, except to the amount of $476.07 due for taxes in December, 1932. The court held, following the report of the special master, that the consent of the receivers of Paramount-Toledo Corporation to the appellant's collection of subrents due when those receivers were appointed did not terminate the lease, but that the collection of rents due subsequently, being made without the consent of the lessee entitled to them, did have that effect and ended the liability of the debtor thereunder. Accordingly, the claim for the amount due and unpaid on May 2, 1933, was allowed and the remainder disallowed in the order confirming the report from which this appeal was taken.

█ A determined effort has been made by the appellant to show that Reuben was acting as the authorized agent of Toledo-Paramount Corporation as well as one of its receivers in consenting to the appellant's collection of subrents, but the special master found that neither Paramount-Toledo Corporation nor the debtor consented to the collection of the subrents, and as the finding was accepted by the court in confirming the report and was supported by the evidence, we also accept it. Yet that is less than enough to justify the order below which was based upon the theory that the Ohio law, following the common law, not only relieves a lessee who has been evicted of further liability under a lease in the absence of a covenant to the contrary, but that in Ohio the collection of subrents by a lessor without the consent of the lessee after the lessee is in default amounts to an eviction which terminates the lease. We do not so understand the Ohio law as laid down by its highest court whose interpretation of it binds us.

█ In that state under Rule of Practice No. 6, the decision as to the law is found in the syllabus prepared by the court and that, instead of the opinion, which "states the process of reasoning by which the court arrived at its judgment and its declaration of the law in the syllabus," is the authoritative expression of the law. State v. Hauser, 101 Ohio St. 404, 131 N.E. 66. As stated in the syllabus in Williamson Heater Co. v. Radich et al., 128 Ohio St. 124, 190 N.E. 403: "The syllabus of a decision of the Supreme Court of Ohio states the law of Ohio, but such pronouncement must be interpreted with reference to the facts upon which it is predicated and the questions presented to and considered by

the Court." See, also, Baltimore & Ohio R. R. Co. v. Baillie, 112 Ohio St. 567, 148 N.E. 233; Coney Island Co. v. McIntyre-Paxton Co. (C.C.A.) 200 F. 901, 908.

█ The tendency in Ohio seems to have been away from the theory that if a lessee defaults under a lease containing no covenant for continued liability after re-entry by the lessor and the lessor does re-enter and relet without the lessee's consent, there is an eviction which terminates the lease. Instead of that, such action by the lessor has been considered to have the effect of diminishing the damages recoverable for the default. Stuart & Henley v. Ford, 11 Ohio Cir.Ct.R. 453. Some of the decisions went so far as to hold that this was true even where the re-entry and reletting was without notice. Crown Mfg. Co. v. Gay, 9 Ohio Dec.Reprints 420 (leave to appeal denied); Strong v. Schmidt, 15 Ohio Cir. Ct.R. 233; Shipman v. Stone, 16 Ohio Cir. Ct.R.(N.S.) 466, affirmed 80 Ohio St. 715, 89 N.E. 1124. In 1917, in the case of Bumiller v. Walker, 95 Ohio St. 344, 116 N.E. 797, 798, L.R.A.1918B, 96, the Supreme Court of Ohio had occasion to and did decide, as the syllabus shows, that: "An acceptance by the landlord of the key to the premises, his advertising for a new tenant, and renting the premises to another upon its vacation by the old tenant, under the facts stated, are not sufficient to constitute a surrender." The pertinent facts were that Walker had given Bumiller a written lease of real estate for one year at a stipulated annual rental payable in monthly installments. Bumiller went into possession and occupied the premises for the full term and held over into the thirteenth month after paying rent not only for the term but for the thirteenth month in the monthly amount stipulated in the lease. During this additional month Bumiller abandoned the premises and refused to pay further rent. "Walker then rented the premises for the remaining 11 months for a lower, though the best available, rent, and at the end of the year brought suit for the amount claimed to be due for the remainder of the annual term, less the amount received for rent during that period." Bumiller admitted as much, but relied in defense upon an alleged oral agreement made with Walker during the term to the effect that he might hold over at the same rental on a month to month tenancy and that he vacated the premises only after giving due notice of the termination of such a tenancy, whereupon he

**86**

surrendered the premises to Walker, who accepted such surrender by re-entry and re-letting. Judgment on a verdict for the defendant in the trial court was reversed by the Court of Appeals for error in admitting evidence of the parol agreement during the term in modification of the written lease. The cause was ordered certified to the Supreme Court, where the judgment was reversed, although the jury's verdict being a general one, it would not have been reversed had substantive proof of a surrender of the premises been introduced. In giving the reason for that part of the decision which appears in the above quotation from the syllabus it was said in the opinion: "There is no evidence tending to show consent or acquiescence in the surrender upon the part of Walker. Walker could not have done otherwise than he did; his acceptance of the key, advertising for a tenant, and renting of the premises became his legal duty." Since Bumiller v. Walker was decided, the Ohio Court of Appeals has held upon the authority of that case that a landlord might recover rent reserved in a lease where the tenant had abandoned the premises after notice of such intention given the landlord and the landlord re-entered and attempted to relet without notice to the tenant. Gross v. Levin, 12 Ohio Law Abs. 142. See, also, Baker v. Herringer, 16 O.A. 253.

Although the issue here is not one of surrender, it is whether the lease was ended by what is claimed to have amounted to a legal eviction by collecting subrents belonging to the tenant without the tenant's consent and the same principles apply. The collection of the subrent after default obviously would have no greater legal significance than would actual re-entry and reletting without notice after default. Since a landlord in Ohio may do the latter and, without any covenant permitting, may still recover of the tenant the rent reserved for the remainder of the term less the rent received on reletting, we can perceive no reason why the appellant in this case could not collect the subrents without either notice to or consent of the tenant for the purpose of applying them as credits against the amount due under the lease executed by the appellant.

The appellee urges that as the Ohio law applicable was treated by the court below as being the same as the common law without any contention to the contrary there being made, we are bound by what was there held in respect to it. But this is an erroneous conception, perhaps due to the rule that in the courts of one state the laws of another state are to be proved as facts. In United States courts judicial notice is taken of the law of any state. Lamar v. Micou, 114 U.S. 218, 223, 5 S.Ct. 857, 29 L.Ed. 94; Fourth Nat. Bank v. Francklyn, 120 U.S. 747, 751, 7 S.Ct. 757, 30 L.Ed. 825. The collection of the subrents for application as a credit upon rent due and to become due under the head lease indicates no intention by the appellant to terminate the head lease, but rather the contrary. After the debtor assigned that lease, it became the surety for the assignee upon the latter's assumption of the debtor's liability thereunder. Sutliff v. Atwood, 15 Ohio St. 186; McHenry v. Carson, 41 Ohio St. 212. The assignee has become insolvent and, upon liquidation, its assets have been insufficient to pay its creditors leaving the surety bound.

As the lease was not terminated under the Ohio law until it was rejected by the debtor's trustees, the claim should have been allowed for the rent and taxes due on the date of the rejection and for injury, if proved, due to the rejection.

Order reversed.