In re UNITED CIGAR STORES CO. OF AMERICA.

No. 208.

Circuit Court of Appeals, Second Circuit.
April 5, 1937.

4.

Cadwalader, Wickersham & Taft, of New York City, and James B. Benedict, of Cincinnati, Ohio (Walbridge S. Taft, of New York City, James B. Benedict, of Cincinnati, Ohio, and Jacquelin A. Swords and Whitman Knapp, both of New York City, of counsel), for appellant.

Cravath, deGersdorff, Swaine & Wood, of New York City (Donald C. Swatland, R. L. Gilpatric, and B. R. Shute, all of New York City, of counsel), for appellees.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

SWAN, Circuit Judge.

The appellant filed proof of claim in the reorganization proceedings of United Cigar Store Company of America claiming damages resulting from rejection of his lease by United's trustee in bankruptcy in proceedings antedating the reorganization proceedings. The claim was disallowed on the ground that United was never a tenant of the appellant.

In 1921 the appellant's predecessor in interest leased premises in Cincinnati, Ohio, to Boebinger's, Inc., then known as Frank A. Leininger Company, for a term ending December 31, 1933. In 1926 Boebinger's sublet to United for the balance of the term, and the appellant and United entered into an agreement to define their respective rights in the event that Boebinger's should thereafter default under its lease. August 29, 1932, United was adjudicated bankrupt upon its voluntary petition. At the date of bankruptcy United was in possession of the corner cigar store, and its receiver and trustee in bankruptcy continued to occupy it until November 5, 1932. The rest of the premises had been sublet by United to various subtenants. On September 13th the appellant notified United and its trustee in bankruptcy that Boebinger's had repudiated its lease and that the appellant would thereafter consider United as his tenant pursuant to the terms of their agreement. On November 1, 1932, the trustee notified the appellant of its election to reject "said lease" pursuant to an order of the referee in bankruptcy dated October 28, 1932. On or about June 9, 1934, the bankruptcy proceedings were converted into reorganization proceedings, and shortly thereafter the appellant filed his claim therein, to which the debtor's trustee filed objections.

The effect of the notice of September 13th and the meaning of the agreement between United and the appellant is the first matter in dispute. The agreement is too long to be set out in full. It provided that, "in the event that" Boebinger's should forfeit its lease, abandon the premises, or be dispossessed for any default, then United and its subtenants might nevertheless continue to occupy the premises until expiration of the term demised by the sublease upon the making of the

rental and tax payments provided by the sublease, but subject in other respects to the terms of the Boebinger's lease; and "the Owner agrees in such event to recognize United as the tenant and to accept the rent from United until such expiration date, namely, December 31, 1933; and United agrees in such event to become the tenant of the Owner and to pay rent to the Owner." "In such event" the parties agreed to execute a new lease for the balance of the term within thirty days after written demand therefor by either party. There was also a further provision to the effect that if Boebinger's should default in the payment of rent for any month and United should be promptly notified of such default, then United "shall be responsible to the Owner for the payment of the rental provided in the aforesaid sublease" for said month and all subsequent months; and that after giving such notification the owner should take immediate steps to cancel Boebinger's lease so that United might be relieved from further obligation to Boebinger's.

We think it plain that the foregoing provisions did more than grant to United the privilege, at its option, to continue to use and occupy the premises, if Boebinger's lease should be forfeited. The recurring phrase "in such event" refers to the preceding conditions introduced by the words "in the event that." If any of those conditions should happen, "in such event" United agreed to pay its rent to Taft and he agreed to accept it. The circumstances as well as the language support this construction. In June, 1926, United was about to obtain the sublease from Boebinger's and to make alterations in the demised building; it wanted to be immune from the consequences of any future defaults by Boebinger's, and made the agreement with the owner to accomplish this purpose. The agreement expresses the intention that United should become the tenant of the owner and pay him the same rent as would otherwise be payable to Boebinger's, in case the latter should abandon the premises or be dispossessed for default. That the agreement gave United merely an option to become a tenant is plainly an afterthought. The appellee's objection to Taft's claim treated the relation as that of landlord and tenant, and the stipulation of facts upon which the case was tried was expressly to that effect. It is doubtless true, however, that the facts do not justify the legal conclusion that at the date of bankruptcy, the relations of the parties were those of landlord and tenant: The condition upon which that relationship was to arise had not yet occurred, but United was subject to a contractual duty to become a tenant if the condition should occur.

Bankruptcy was an anticipatory breach of the executory contract to become Taft's tenant upon occurrence of the condition. An executory contract, as well as an unexpired lease, will serve as the basis for a claim under section 77B (b) (10), 11 U.S.C.A. § 207 (b) (10), if rejected by the promisor's trustee in bankruptcy. We come, therefore, to the second contention of the debtor's trustee, namely, that Taft reentered the premises before United's trustee in bankruptcy rejected the contract, and thereby lost any claim he might otherwise have. Taft's letters to the trustee in bankruptcy show that on September 23, 1932, representatives of the trustee called upon him and stated that United intended to surrender the portions of the property which it had sublet. They desired to negotiate a separate lease for the corner cigar store but offered terms unacceptable to Taft. His letter of September 26th asked that the trustee inform him of its intentions, and requested that September rents collected from subtenants be paid to him, stating that he would credit them against the trustee's period of occupancy. Having received no reply, he wrote again on October 4th, saying: "Because you have had a reasonable time within which to affirm or disaffirm your lease, I have accordingly told subtenants to pay rent to me instead of to you, and I expect to proceed within the next few days in making an arrangement for the vacant store. All rents received by me from subtenants will be credited to you against my claim for the period of your occupancy." No reply was vouchsafed until the trustee's letter of November 1, 1932, notifying Taft of its rejection of the "lease." Beginning October 4, 1932, Taft collected rents from the subtenants.

It is urged by the debtor's trustee that under Ohio law collection of subrents by a head-lessor is a surrender of the term which terminates any liability for future rents. The applicability of the cases relied

on to a situation where the relation is not that of landlord and tenant, but that of promisee and promisor, is not apparent. But in any event we took the contrary view of the Ohio law in Re Paramount Publix Corp., 85 F.(2d) 83. Moreover, in the present case there was no surrender of the term prior to November 5, 1932, for the trustee remained in undisturbed possession of part of the premises, the corner cigar store, until it was voluntarily given up on that date. The appellant's collection of rents from subtenants, after being informed that the trustee intended to relinquish the sublet portions of the premises, was apparently with the trustee's acquiescence, but clearly it evidenced no rescission of the contract, as Taft asserted that he would credit collections upon his claim. Even if Taft's collection of the subrents was wholly unauthorized by the trustee in bankruptcy, the effect of collection was merely to reduce pro tanto the amount of his damages resulting from the trustee's rejection of the contract. No reason is apparent why it should result in a forfeiture of his claim. See City Bank Farmers Trust Co. v. Irving Trust Co., 299 U.S. —, 57 S.Ct. 292, 81 L.Ed. —. A trustee in bankruptcy is entitled to a reasonable opportunity to determine whether to adopt or reject an executory contract. If he adopts it and performs the bankrupt's duties thereunder, he can insist upon performance by the other party. While the trustee still has the matter of adoption under advisement, it may be assumed that he could restrain the other party from disposing of the subject-matter of the contract or otherwise acting in a manner to impair the trustee's option to adopt the contract. See In re Chambers, Calder & Co., 98 F. 865 (D.C.R.I.); In re Kleinhans, 113 F. 107 (D.C.N.D.N.Y.); In re Schwartzman, 167 F. 399 (D.C.S.C.); In re Lombardy Inn Co., 266 F. 394 (D.C.Mass.). But if he rejects it, the bankrupt's anticipatory breach is never cured and the conduct of the other party in dealing with the subject-matter of the contract in the meantime has only resulted in mitigating the damages caused by the rejection. Hence Taft had a provable claim for whatever damages he suffered. Whether the three-year limitation applicable to a landlord's claim based on rejection of a lease is likewise applicable to the rejection of an executory contract to become a tenant, we need not now decide, for the term expired December 31, 1933.

The order expunging the claim is reversed and the cause remanded to determine its amount.