**NATIONAL SURETY CORPORATION v. CITY OF ALLENTOWN et al.**

No. 20536.

District Court, E. D. Pennsylvania.

Nov. 29, 1939.

Fox & McTighe and Desmond J. Mc-
Tighe, all of Norristown, Pa., Fred B. Ger-
nerd, of Allentown, Pa., and Conlen La-
Brum & Beechwood and George E. Beech-
wood, all of Philadelphia, Pa., for plaintiff.

Calvin E. Arner, of Allentown, Pa., for
defendant City of Allentown.

S. D. Frederick, of Allentown, Pa., for
defendant Lehigh County.

Reuben J. Butz, of Allentown, Pa., for
defendant City of Allentown School Dist.

KIRKPATRICK, District Judge.

This is a suit brought by a surety company against three municipalities for the premium upon a bond, which it executed as surety for the Treasurer of the City of Allentown who was, under the law, also tax collector for city, county, poor and school district taxes within the city. The case was tried by the Court, without a jury.

Mr. Kern was elected City Treasurer of Allentown in November, 1935. On November 19, he made written application to the plaintiff for his bond, agreeing to pay a premium of $6,600. The bond was executed on December 20 and approved by the City on December 24, and on January 6, 1936, Mr. Kern took office.

No premiums have ever been paid upon the bond, and the plaintiff claims $19,980 for three years' premiums with interest.

The plaintiff's case is that the City of Allentown had power, under the statute, to bind the School District and the County and did so by approving the bond, obligating all three defendants to pay the premium agreed to by Kern in the application—in other words ratified Kern's contract on behalf of itself and the other two defendants. In the alternative, the plaintiff claims that each of the three defendants received the protection of the bond and, by permitting it to stand without protest, became bound to pay quantum valebat, the amount of the premium actually charged being a reasonable price for the protection afforded.

The City's defense is technical. It recognizes a moral obligation for some portion of the premium, but takes the position that the plaintiff, having declared on an express contract, has proved no more than its right to a fair and reasonable premium, and hence can not recover in this suit.

The position of the School District is (1) that the statute in force prescribed that a City Treasurer must give separate bonds to each of the municipalities whose taxes he collects, and that the single bond given by Mr. Kern to the City was not in compliance with the law, did not enure to the benefit of the School District and cannot be the basis of any claim for premiums against it, (2) that the bond is not the kind of bond required by the statute—that is, that the law calls for a "faithful performance" bond,[1] whereas Mr. Kern's bond was a fidelity bond only—and hence there is no liability (3) that, even if the bond is in substantial compliance with the law, the School District is not liable for the agreed premium because it never ratified Kern's agreement, either by its own act or through the agency of the City; but that, if liable at all upon a quantum valebat, it is liable only for what would be a reasonable premium upon a fidelity bond—an amount much less than plaintiff claims.

The defense of the County is substantially the same as that of the School District.

The facts themselves are not in dispute, but the inferences to be drawn from them, particularly as to ratification, are.

The first question is whether the applicable statute of Pennsylvania authorized one fidelity bond, for the benefit of all three municipalities, or whether three separate bonds, each in the nature of a faithful performance bond, should have been given.

The Third Class City Code of 1931 of Pennsylvania, 53 P.S.Pa. § 12198—101 et seq., made all city treasurers also collectors of city, school and poor taxes assessed within their cities. Their bonds are dealt with in Article XIV, Sec. 1402, and in Art. XXV, Sec. 2553 of the Code, 53 P.S. Pa. §§ 12198—1402, 12198—2553.

It is quite plain that the intention of the Act was that a city treasurer should give a bond as city treasurer and collector of city taxes and also separate bonds to the school district and the county in respect of the school taxes and poor taxes which he would have to collect—three bonds in all. The provision of Sec. 1402, which reads, "The

---

[1] The term "faithful performance bond" does not seem to have acquired a precise legal meaning but has been adopted in this case as a convenient term to designate a bond in which the surety assumes liability not only for losses incurred by embezzlement and acts of dishonesty on the part of his principal but also his failure to discharge his official duties faithfully. For example, failure to collect taxes through negligence or through the adoption of methods not authorized by law would make the surety liable upon such a bond. Of course, under a strict fidelity bond there would be no liability for such derelictions in the absence of fraud or dishonesty. The fact is that the various statutes rather fully define the surety's obligation as to the bonds given under each, and it is really not necessary to attempt to classify the bond or, except as a matter of convenience, to give it a name.

city treasurer shall be required to give but one bond to the city which shall include his duties as city treasurer and collector of taxes" merely means that he does not have to give one bond to the city as city treasurer and a second bond to the city as collector of city taxes. Sec. 2553 provides for the fixing of the amount of the bond, severally, by the three municipalities involved —a provision which would be impracticable unless separate bonds were contemplated.

The character of the obligation required, under the 1931 law, of the officer and his sureties is plainly what has been described as a faithful performance bond (see Sec. 1402.) The provision is that the surety is to assume the obligation that the city treasurer, as tax collector, "shall well and truly collect and pay or account for the whole amount of taxes charged and assessed in the duplicates * * *".

Thus, prior to the 1935 session of the Legislature a city treasurer was required to give separate faithful performance bonds to the city, school district and county, respectively. This kind of bond, of course, involves a greater liability to the surety than an ordinary fidelity bond, and therefore would justify a higher premium.

The Act of June 21, 1935, P.L. 363, was the first of two amendments enacted by the Legislature of that year, changing the law relating to city treasurers' bonds. It expressly repealed Sec. 2553 of the City Code of 1931. It did not repeal Sec. 1402 and it did not change the general requirement that the bond should be conditioned for the "honest and faithful discharge of his official duties" (a provision which might apply both to his duties as treasurer and as tax collector), but it very greatly narrowed and carefully defined and limited the obligation to be assumed with respect to the collection of taxes. Under it a treasurer's (and his surety's) obligation would be fully met if the treasurer paid over to the proper authorities all taxes which he actually collected and accounted for the balance by showing exoneration, returning the real estate upon which the taxes remained uncollected and making out schedules showing the amount of such uncollected taxes.

■ The repeal of Sec. 2553 of the 1931 law eliminated the basis for the interpretation of that Act, which, as above stated, seemed to require separate bonds. Only one bond was to be given and it was to include the officer's duties as city treasurer and as collector of city, school, county and poor taxes. The amendment of the part of the City Code (Sec. 1402, 53 P.S.Pa. § 12198—1402) which defined the character of the surety's obligation reduced the surety's liability for collection of taxes to the ordinary liability of a surety on a fidelity bond.

The Act of June 21, 1935, did not affect the city treasurers who were in office when it was passed. Its last section (6) 53 P.S. Pa. § 12198—1402 note, provides: "This act shall be in force in each city only as to city treasurers elected after the effective date of this act. In the case of city treasurers in office upon the effective date of this act, the laws in force prior to the adoption of this act shall continue, and for such purpose, the acts repealed by this act shall be deemed to continue in force until this act is in complete operation in all cities of the third class."

■ Obviously, the Act of June 21, 1935, applied to Mr. Kern (who did not take office until January 1936) and, if the Act of July 12, 1935, P.L. 719, 53 P.S.Pa. § 12198—1402, had not been passed, no question could have arisen that the single bond which he gave, with its limited fidelity obligation, was not exactly what the law prescribed and was for the benefit of all three municipalities.

However, as to all officers then holding office the broader type of liability provided for by the City Code of 1931 remained as it had been.

This must have appeared to the Legislature to be an anomaly which required correction, and that, no doubt, was what led to the passage of the second of the two amending Acts of 1935—the Act of July 12th. The title of this Act recites that it amends certain sections (including 2553) of the Third Class City Code of 1931 " * * * by changing the conditions of the bond of the city treasurer as tax collector" etc. The Act then proceeds to amend Sec. 2553 without reference to its repeal by the Act of June 21, 1935. This clearly indicates that the Legislature considered that it was dealing with subject matter as to which that section was continued in force, and, returning to the Act of June 21, 1935, we see that it was as to city treasurers then in office that "the acts repealed by this act shall be deemed to continue in force", while as to incoming treasurers it was repealed.

The Act of July 12 goes on to provide that the several bonds required shall be fidelity bonds, thus bringing the requirements for treasurers in office in line with those established for incoming treasurers by the earlier Act of June 21, 1935.

The two amending Acts are perfectly consistent and reconcilable if the last Act be construed as applying only to city treasurers actually in office. There is no real difficulty about adopting this construction but, of course, it would have been plainer if the Act had specifically said so. However, I think that that is what it plainly means, and that view was adopted by the Court of Common Pleas in Cox's Bond, 27 D. and C., Pa., 574. It is also in accordance with the general plan of statutory construction enacted into the law of the State of Pennsylvania by Section 75 of Article V of the Act of 1937, 46 P.S.Pa. § 575, which provides: "Whenever two or more amendments to the same provision of a law are enacted at the same or different sessions, one amendment overlooking and making no reference to the other or others, the amendments shall be construed together, if possible, and effect given to each. If the amendments be irreconcilable, the latest in date of final enactment shall prevail from the time it becomes effective." .

It is my opinion that the Act of July 12, 1935, has no effect upon the bond which Mr. Kern was required to give, that situation was governed by the Act of June 21, 1935, and that the single bond given by him and executed by the plaintiff is for the benefit of all three municipalities and in substantial accordance with the applicable law.

What has been said practically disposes of the second question in this case, namely, the character of Mr. Kern's bond and the extent of his surety's obligation. Under the Act of June 21, 1935, the tax collector can perform the condition of the bond by an accounting in which he merely shows that he has paid over all the taxes he has received and that as to the others he has either been exonerated or has failed to collect them. This leads to the conclusion that the bond given by Mr. Kern which was in conformity with the language of June 21, 1935, was a fidelity bond, and that the obligation of his surety did not extend to liability for negligent but honest failure to collect or pay over taxes.

The surety, having given bond in accordance with the law which has been enforced during Mr. Kern's term of office, is entitled to be paid for it. The third question involved is, how much.

By the application which he signed, Mr. Kern agreed to pay a premium of $6,600 a year. The amount of this premium was fixed by the Company on the theory that the bond was a faithful performance bond importing much broader liability than it really does. None of the municipalities involved ever made any express contract with the Surety Company to pay this premium. Nor do I think that any of them ratified Mr. Kern's express agreement to pay it.

Of course, a municipality may ratify a contract made by an unauthorized agent, and the ratification need not be express, but the acts relied on to establish it should be direct, explicit and unequivocal, with full knowledge of the facts and with the intent to recognize the validity of the obligation. 19 R.C.L. 1075. Of the three municipalities involved the city came the nearest to ratification. In effect, however, the sum of its acts amounted to fixing the amount of the bond, and approving the bond as given. The inclusion in its budget of the amount to meet the premiums contracted for by Mr. Kern may be some evidence of ratification, but it is by no means conclusive. The County and the School District did less than the City. The conferences with the two councilmen and the City Solicitor can hardly be claimed to constitute binding municipal action. It must be remembered that while all these municipalities were bound by law to pay the premium on the bond that does not mean that they were bound to pay whatever premium the officer might have fixed in his application.

Ratification is a question of fact where varying inferences may be drawn from the evidence, even though the facts are not in dispute. In Detroit v. Grummond, 6 Cir., 216 F. 273, it was held to be a question for the jury. I find as a fact that none of the defendants by any valid municipal action ratified Mr. Kern's agreement to pay a premium of $6,600.

However, there still remains an obligation upon the part of the municipalities to pay the fair value of the protection which they have received. Similar obliga-

tions have generally been described as arising on implied contracts, but whether this or quasi-contractual is not of great importance. The doctrine of implied municipal liability applies to cases where money or other property of a party is received under such circumstances that the general law, independent of the express contract, imposes the obligation upon the city to do justice with respect to the same. Argenti v. San Francisco, 16 Cal. 255, 282. The doctrine is recognized in a long line of Pennsylvania decisions, which includes Allegheny City v. McClurkan & Co., 14 Pa. 81; Philadelphia v. Lockhardt, 73 Pa. 211; Long v. Lemoyne Borough, 222 Pa. 311, 71 A. 211, 21 L.R.A.,N.S., 474; Aspinwall-Delafield Co. v. Aspinwall, 229 Pa. 1, 77 A. 1098; Hall v. Dormont, 99 Pa.Super. 296; and others.

This obligation is, however, limited to paying the reasonable value of the property or services of which the municipality has had the benefit. I do not think, in the present case, that the testimony of the experts called by the plaintiff can be allowed to govern, because they testified on the theory that the bond was a faithful performance bond, or, at any rate a bond embodying a much wider liability than the one actually authorized and assumed. There is testimony, however, to the effect that, if this bond were to be construed as a fidelity bond (as it must be so far as the liability as tax collector is concerned), a reasonable premium would be not less than $5 a thousand and not more than $10. In view of all the circumstances of this case, I think the surety should have the benefit of the larger figure, and I therefore hold that the municipalities are liable under the law to pay an annual premium of $1,250

### Findings of Fact.

The following plaintiff's requests for findings of fact are affirmed: Nos. 1 to 13, inclusive; 19 to 22, inclusive; 24, 25, 26, 28 and 31.

The School District's requests Nos. 1 to 12, inclusive are affirmed. 17 is affirmed, with the qualification that there is no evidence of an express contract.

The City of Allentown's requests Nos. 1, 3 and 4 are affirmed.

The other requests for findings of fact are either denied or not answered as immaterial in view of the Court's findings.

The Court makes the following special findings of fact:

1. The contract made by Mr. Kern to pay the sum of $6,600 was not ratified either expressly or impliedly by any of the defendants.

2. A reasonable premium representing the fair value of the protection afforded the municipalities by the bond is $1,250 per year.

### Conclusions of Law.

The plaintiff's requests for conclusions of law Nos. 1, 2, and 3 are affirmed. The remaining requests of the plaintiff are denied.

The School District's requests Nos. 9 and 10 are affirmed. All others are denied.

The City of Allentown's requests Nos. 1, 2, 5 are affirmed. All others are denied.

The Court states the following conclusions of law:

1. The Act of June 21, 1935, is in force and governs the bonds of all city treasurers, including Mr. Kern, elected after the passage of that act.

2. As to the duties of the treasurer as tax collector, it requires a bond in the nature of a fidelity bond.

3. The bond given by Mr. Kern was in conformity with the law and has afforded the municipalities the protection required by the law during Mr. Kern's term of office.

4. The defendant municipalities are each under an implied obligation to pay one third of a premium representing the fair and reasonable value of the protection afforded them.

5. The new Rules of Federal Procedure, 28 U.S.C.A. following section 723c, are applicable to this case.

6. The amended statement of claim filed by the plaintiff sufficiently sets forth a cause of action under which the plaintiff may recover the fair and reasonable value of the protection given by its bond.

Judgment may be entered for the plaintiff in accordance with the foregoing.