456 F.2d 414
 In the Matter of MARYVALE COMMUNITY HOSPITAL, INC., an
Arizona corporation, Debtor.
Frank J. DUNNING, as Trustee of the Estate of Maryvale
Community Hospital, Appellant,
v.
Theodore E. BRATRUD, Appellee.
 No. 25500.
 United States Court of Appeals,
Ninth Circuit.
 Feb. 11, 1972.
Rehearing Denied April 20, 1972.
Rehearing En Banc Denied April 26, 1972.
 
 Charles M. Duecy (argued), of Duecy, Moore, Petsch & Robinson, Scottsdale, Ariz., John F. Sullivan, Phoenix, Ariz., for appellant.
 Before ELY and HUFSTEDLER, Circuit Judges, and Ferguson,* District Judge.
 PER CURIAM:
 
 
 1
 This case arises out of the Chapter X bankruptcy proceedings involving Maryvale Community Hospital, Inc., which are set forth in the opinion of this court filed this date entitled, "In the Matter of MARYVALE COMMUNITY HOSPITAL, INC., an Arizona corporation, Debtor; HEALTH FACILITIES PLANNING COUNCIL, an Arizona nonprofit corporation, Appellant v. FRANK J. DUNNING, as Trustee of the Estate of said Debtor, Appellee; GARY K. NELSON, the Attorney General of the State of Arizona, Appellant v. FRANK J. DUNNING, as Trustee of the Estate of said Debtor, Appellee", Numbers 25,586 and 25,587, 456 F.2d 410.
 
 
 2
 Here, the appeal is from a judgment entered in those proceedings by the district court in favor of Dr. Theodore E. Bratrud against the Chapter X trustee in the amount of $90,000. We reverse.
 
 
 3
 The following relevant facts govern this appeal:
 
 
 4
 1. On October 25, 1962, Dr. Bratrud, appellee herein, and Maryvale Hospital executed an agreement pursuant to which Dr. Bratrud became the pathologist for the hospital for a term of five years.
 
 
 5
 2. In July, 1963, upon a default in payments to the hospital's bondholders, the indenture trustee filed a state court action for an accounting and the appointment of a receiver to manage the hospital.
 
 
 6
 3. On July 31, 1963, co-receivers, one of which was Fred Foster, were appointed by the state court.
 
 
 7
 4. The next day, five of the bondholders filed a petition in federal district court for reorganization of the hospital under Chapter X of the Bankruptcy Act.
 
 
 8
 5. On November 26, 1963, the state court action was dismissed, and pending the approval of the Chapter X petition, Mr. Foster was appointed receiver of the hospital by the district court.
 
 
 9
 6. On May 11, 1964, the district court approved the Chapter X petition and appointed Mr. Roland Wilpitz as trustee. Subsequently, Mr. Wilpitz resigned, and Mr. Dunning, the appellant herein, was appointed as his successor.
 
 
 10
 7. Meanwhile, while he was the interim Chapter X receiver, Mr. Foster filed a petition in the district court alleging that during the previous state court receivership disputes had arisen between the state receivers and Dr. Bratrud concerning the termination of the pathology contract. Mr. Foster sought an order to restrain Dr. Bratrud from performing any activities at the hospital.
 
 
 11
 8. On February 18, 1964, the district court issued a temporary restraining order preventing Dr. Bratrud from occupying the pathology laboratory, and an order to show cause why a preliminary injunction should not be granted.
 
 
 12
 9. After a trial, a judgment was entered which set forth:
 
 
 13
 (a) Dr. Bratrud and the hospital entered into the pathology contract on October 25, 1962.
 
 
 14
 (b) On October 28, 1963, in the state court action by the indenture trustee, an order was made purporting to terminate the contract.
 
 
 15
 (c) However, the contract was still in full force and effect and binding upon Mr. Foster as the Chapter X receiver.
 
 
 16
 (d) The temporary restraining order was vacated and the petition for an injunction was denied.
 
 
 17
 10. Shortly thereafter, on June 15, 1964, Mr. Foster filed a final account and report and petition for allowance of fees. The district court referred these matters for hearing to the bankruptcy referee, as special master in the Chapter X proceeding. Dr. Bratrud filed exceptions to Mr. Foster's accounting and petitioned the court for the payment of the sum of $30,470.95 as the sum due him under the contract from August 1, 1963, through April 30, 1964.
 
 
 18
 11. On July 24, 1964, Trustee Dunning filed a petition to terminate the contract between Dr. Bratrud and the hospital pursuant to Section 116(1) of Chapter X of the Bankruptcy Act.
 
 
 19
 12. On August 11, 1964, an order was entered which permitted the trustee to terminate the contract, effective August 3, 1964, and, pursuant to Section 202, authorized Dr. Bratrud to present such claims for damages as he might suffer as the result of the rejection of the contract. The order provided that he be deemed a creditor in such amount as the court may subsequently determine. Dr. Bratrud at no time objected to the order permitting Trustee Dunning to reject the contract.
 
 
 20
 13. On February 9, 1965, the referee, with reference to Foster's accounting and Dr. Bratrud's claim in that proceeding, issued his order finding that Dr. Bratrud was entitled to the sum of $30,543.60 as money due him under the pathology contract from August 1, 1963 through April 30, 1964, and ordered Trustee Dunning to pay Dr. Bratrud that sum. Dr. Bratrud was paid such amount.
 
 
 21
 14. All of the preceding judgments and orders have become final.
 
 
 22
 15. On May 25, 1966, Dr. Bratrud filed a petition for an order to show cause why Trustee Dunning should not pay damages for rejection of the pathology contract.
 
 
 23
 16. The district court referred this matter to the referee for hearing and determination. On June 8, 1966, the referee issued an order directed to Trustee Dunning to show cause why Dr. Bratrud's damages should not be paid out of the debtor's assets.
 
 
 24
 17. Trustee Dunning then moved to quash this order upon the ground, first, that the district judge had not fixed the time pursuant to Sections 196 and 197 of Chapter X for filing proofs of claims of creditors and that Bratrud, an unsecured creditor at best, was seeking a priority over secured creditors, and his petition was not timely; and, secondly, that the pathology contract had been assigned by Dr. Bratrud prior to the time for which he sought compensation and Dr. Bratrud, therefore, had no rights under it.
 
 
 25
 18. The referee conducted an evidentiary hearing on June 29 and 30, 1966, and then issued an order which determined that:
 
 
 26
 (a) On April 28, 1964, Dr. Bratrud had voluntarily assigned all his rights in the contract to Dr. Judson A. Davidson, which assignment became effective May 1, 1964.
 
 
 27
 (b) Neither Dr. Bratrud nor the debtor hospital had terminated the contract prior to that assignment.
 
 
 28
 (c) Dr. Bratrud wrote to Trustee Dunning that his pathology contract with the hospital had been terminated by mutual agreement.
 
 
 29
 (d) As the contract had been assigned by Dr. Bratrud prior to the order authorizing rejection, he could not be and was not damaged by the rejection.
 
 
 30
 19. Dr. Bratrud then filed a petition for review of the referee's findings. The sole issue certified to the district court was the finding by the referee that Dr. Bratrud's assignment of his contract was voluntary.
 
 
 31
 20. The district court, on review of the record, held that Mr. Foster, during the time that he was the state court coreceiver and federal court receiver, had breached the contract by his actions in preventing Dr. Bratrud from performing under it and evicting Dr. Bratrud from the hospital. The court held that because of Receiver Foster's acts, Dr. Bratrud was forced economically to assign the contract to Dr. Davidson, and the assignment was not voluntary as the referee had found. The district court entered a judgment vacating the referee's order and awarding Dr. Bratrud the sum of $90,000 against Trustee Dunning. This figure was determined by a formula for liquidated damages in the contract. It is from that judgment that the trustee appeals.
 
 
 32
 Section 116(1) of Chapter X of the Bankruptcy Act (11 U.S.C. Sec. 516(1)) provides that "upon the approval of a petition, the judge may . . . permit the rejection of executory contracts of the debtor . . . ." Section 202 (11 U.S.C. Sec. 602) provides that "In case an executory contract shall be rejected pursuant . . . to the permission of the court given in a proceeding under this chapter, or shall have been rejected by a trustee or receiver in bankruptcy or receiver in equity in a prior pending proceeding, any person injured by such rejection shall . . . be deemed a creditor".
 
 
 33
 After a court has approved a Chapter X reorganization petition, the trustee appointed in that proceeding must within a reasonable time recommend to the court whether to adopt or to reject the debtor's executory contracts. Philadelphia Co. v. Dipple, 312 U.S. 168, 61 S.Ct. 538, 85 L.Ed. 651 (1941). By the terms of Section 116(1), the power to reject such contracts resides only in the judge before whom the reorganization proceeding is pending, and not in the receiver, the trustee or the referee to whom the proceeding may be generally referred. Matter of Cheney Brothers, 12 F.Supp. 605 (D.Conn.1935). Where a contract is rejected pursuant to Section 116(1), the rejection is effective immediately and for all purposes. 6 Collier, Bankruptcy p 3.24, at 591-92 (1969). A rejection constitutes a breach of the contract which gives rise to a cause of action in the other party for damages. Workman v. Harrison, 282 F.2d 693 (10th Cir.1960); Matter of United Cigar Stores Co. of America, 89 F.2d 3 (2nd Cir.1937). By virtue of Section 202, any person injured by the rejection is deemed a creditor of the debtor holding a provable claim which will be treated on a parity with other similar claims. Matter of Greenpoint Metallic Bed Co., Inc., 113 F.2d 881 (2nd Cir.1940).
 
 
 34
 Applying these principles, it is clear that the district court erred in awarding Dr. Bratrud $90,000. We begin with the fact that the pathology contract was in full force and effect until it was rejected by the order of August 11, 1964. Prior to that time Receiver Foster had petitioned to exclude Dr. Bratrud from the hospital. However, the district court found specifically that the state court order which purported to terminate the contract was invalid, and that the contract was in full force and effect. Therefore, that part of Section 202 which refers to an executory contract having been rejected by a "receiver in equity in a prior pending proceeding" is not applicable to this case. Furthermore the order of August 11, 1964, permitting the trustee to reject the contract, was in itself an implicit finding that the contract was still in effect on that date.
 
 
 35
 Dr. Bratrud does not challenge the finding of the referee, which was not found otherwise by the district court, that Dr. Bratrud assigned all his right, title and interest in the pathology contract to Dr. Davidson for valuable consideration on April 28, 1964. He does not contend that the assignment is voidable, and he has taken no action to vacate that assignment. It thus appears, as the referee found, that Dr. Bratrud had no right in the contract at the time it was rejected.
 
 
 36
 When the pathology contract was rejected pursuant to Section 116(1), Dr. Bratrud became a creditor of the debtor hospital as provided in Section 202, and was entitled to recover in the Chapter X proceeding any damages he suffered as a result of such rejection. Dr. Bratrud has maintained throughout these proceedings that the purpose of his action was, and is, to recover damages as a Section 202 creditor. The referee, applying traditional contract principles, found that the appellee had suffered no damages as a result of the rejection of the pathology contract because he had no right or interest in the contract at the time it was rejected. We agree.
 
 
 37
 The district court misconstrued the nature of appellee's action. The sole question certified to the district court on review was whether the assignment from Dr. Bratrud to Dr. Davidson was voluntary. After reviewing the activities of Receiver Foster with regard to appellee, the court concluded that the assignment was involuntary and the result of economic coercion by the receivers, and that the "cause of action arose when the contract was breached [by the receivers] and [Dr. Bratrud] was prevented from fulfilling his part of the agreement". As a matter of law, however, the cause of action under Section 202 arose on August 11, 1964, when the trustee was authorized to reject the contract. That statement by the district court is, in effect, a finding against receiver Foster for tortious interference with the contractual arrangements between Dr. Bratrud and the hospital. Any damages to appellee which may have resulted from such conduct cannot properly be considered within the context of proceedings for damages resulting from the approved rejection of the contract. The district court improperly turned a hearing on a claim for damages for judicial rejection of the contract into a judgment against the trustee by reason of tortious conduct of the receiver.
 
 
 38
 The question of what motivated Dr. Bratrud to assign his contract is irrelevant for the purpose of determining damages for an authorized rejection. No section of the Bankruptcy Act has been cited to this court which provides that an involuntary transfer may be disregarded in a proceeding for damages for a Section 116(1) contract rejection. Such a rule could lead to the inequitable situation where two claimants seek damages for rejection on a specific date of a single contract which had been assigned sequentially and for valuable consideration between them.
 
 
 39
 Although bankruptcy proceedings are equitable in nature, Pepper v. Litton, 308 U.S. 295, 304, 60 S.Ct. 238, 84 L.Ed. 281 (1939); Local Loan Co. v. Hunt, 292 U.S. 234, 240, 54 S.Ct. 695, 78 S.Ct. 1230 (1934), equity cannot be stretched to the point of permitting a proceeding for damages caused by the rejection of a contract by a trustee to result in damages for alleged tortious conduct while the contract was in effect.
 
 
 40
 The judgment is reversed and the cause is remanded to the district court with directions to issue its judgment affirming the order of the referee.
 
 
 
 *
 Honorable Warren J. Ferguson, United States District Judge, Central District of California, sitting by designation