CITY OF BENTON *v.* James L. POWERS

CA 80-86                                      601 S.W. 2d 260
Court of Appeals of Arkansas
Opinion delivered July 2, 1980
Released for publication July 8, 1980

854

*Curtis C. Rickard*, for appellant.

*Ted Boswell*, for appellee.

ERNIE E. WRIGHT, Chief Judge. This is an appeal from a judgment in favor of the appellee pursuant to a directed verdict denying recovery of monies the city claims were paid to appellee without proper authority upon appellee's retirement.

On May 1, 1978, the appellee James L. Powers retired as general manager of the municipal utilities of the City of Benton after some thirty years service as a municipal employee. He was paid benefits out of city utility funds upon retirement in the amount of $19,353.04, the net amount received by him after withholdings for taxes being $16,235.91. The payment was for sick leave accumulated during appellee's tenure with the city. The basis for the payment was a two year contract entered into on September 23, 1977, between the Board of Commissioners of the Benton Municipal Utilities, which had operated the utilities for over fifty years, and the local unit of the American Federation of State, County and Municipal Employees, together with supplementary contract. The contract provided that any employee, except the management employees, upon being separated from the service would be compensated in cash for unused vacation and sick leave time accumulated, and the pay rate would be the rate in effect on the day immediately preceding the day of separation from the service.

On the day following the date of the contract, the Board of Commissioners wrote appellee a letter stating it was the intention of the Board to apply the union contract vacation pay

and sick leave benefits provided by the union contract to all personnel of the department whether or not they were members of the union, and directed him to be governed accordingly.

On August 12, 1977, prior to the execution of the contract, the Board of Commissioners sued the city Board of Directors challenging certain actions of the city Board in establishing sewer rates. The Board of Commissioners was established more than fifty years ago pursuant to a 1921 local legislative act. On August 15, 1977, the city Board authorized the filing of a counterclaim to determine whether the Board of Commissioners or the city Board of Directors had legal authority over the operation of the municipal utilities. On August 16, 1977, the city Board passed an ordinance with an emergency clause reciting that the management and operation of the electric, water and sewer utilities of the city was divested from the Board of Commissioners and vested in the City of Benton. However, the Board of Commissioners continued to operate the utilities by agreement on behalf of the parties through their respective attorneys pending final adjudication of the controversy by the chancery court.

On November 10, 1977, the chancery court upheld the validity of the ordinance transferring control of the city utilities to the Board of Directors of the city, and held the transfer of authority did not impair existing contracts. After entry of the written precedent of the judgment on January 17, 1978, the city Board of Directors enacted an ordinance abolishing the Board of Commissioners for city utilities effective immediately. Thereafter, the appellee continued in his capacity as general manager of the city utilities.

After formal entry of the chancery court judgment on January 17, 1978, five employees of the city utilities were separated from their employment and received their accumulated sick leave. The appellee retired as general manager of the city utilities on May 1, 1978, and was paid sick leave benefits in keeping with the contract and supplemental letter. Between May 3, 1978 and June 2, 1978, three additional employees left their employment with the city utilities and were paid their accumulated sick leave pay,

and after the Board of Directors took over management of utilities the city continued to observe the union contract in utility operations.

On June 18, 1980, the city brought suit in the circuit court against the appellee Powers to recover the sick leave benefits paid to him. The city alleged the union contract was invalid; that it was not entered into with the permission or approval of the city; the city had not accepted the agreement; and in any event the city utilities management personnel were not entitled to benefits under the agreement.

The appellee answered the complaint asserting the validity of the union contract and that the letter of September 24, 1977 from the Board of Commissioners was a memorandum of a separate agreement with appellee and others. The answer further alleged the actions of the Board of Commissioners were taken with the full knowledge of the city, its servants and employees; that the city was estopped from disclaiming the agreement; that the city had ratified the action of the board of commissioners; and had agreed to and had in fact assumed the obligations to appellee separate and apart from the union contract by agreeing to pay the accumulated sick leave and vacation pay. Appellee further alleged the payment to him was pursuant to management policy of the city established by the Board of Commissioners and assumed and carried out by the city. At the close of appellant's evidence the appellee moved for a directed verdict which was granted, and contends only the trial court erred in directing the verdict.

In directing the verdict the court noted that in the litigation between the Board of Commissioners and the city the chancery court had specifically ruled that contracts entered into by the Board of Commissioners prior to November 10, 1977, were not impaired and were fully binding on the city. The trial court further held the city had failed to submit any substantial evidence in support of its claim to recover the monies paid to the appellee warranting the submission of the issue to the jury; that the city was estopped from denying the contract; and the city had ratified the contract.

The evidence discloses no temporary order was obtained by the city to prevent the Board of Commissioners from continuing to manage the utilities and the Commissioners did in fact manage the operations, with the knowledge of the Board of Directors, until after the chancery court decision on November 10, 1977.

As of June 20, 1978, the records reflect the utility department had paid to six retired or resigned employees an aggregate amount of $57,662.34, for unused vacation and sick leave time since March 15, 1978, pursuant to the contract or policy established by the Board of Commissioners on September 23 and 24, 1977. The city has not repudiated any contractual obligations incurred by the Board of Commissioners, but does attempt to repudiate its obligations to pay the appellee the benefits here in issue.

After the chancery court ruling on November 10, 1977, the city was aware the Board of Directors had authority over management of the utilities, but complete transfer of operating functions was not fully accomplished until the passage of the ordinance on July 17, 1978, abolishing the Board of Commissioners.

On February 6, 1979, the Board of Directors passed a resolution calling for the posting of a public notice advising persons having contracts with the Board of Commissioners prior to August, 1977, to notify the city of such within 60 days, or the contracts and agreements would be deemed null and void. The "null and void" provision was later deleted by a supplemental resolution. At the February 6 meeting a motion was passed directing the city attorney to take legal action to recover sick pay benefits from certain retired or resigned employees, thereby giving rise to the present suit. No suit was filed against any separated employee other than the appellee.

In reviewing the actions of the trial court in directing a verdict for the appellee and against the city, the appellant's brief correctly states the rule that we are to view the evidence in the light most favorable to appellant, and if there is any substantial evidence in the record from which the jury could

have found in favor of appellant, the granting of a directed verdict would be error.

Appellant bases its contention for reversal on the validity of the city ordinance enacted August 22, 1977, transferring authority over the city utilities from the Board of Commissioners to the City Board of Directors. The chancery court ruled on November 10, 1977, that the ordinance was valid and operated to vest the authority over the city utilities in the Board of Directors.

However, since the Board of Directors failed to assume actual management of the utilities upon passage of the ordinance, but on the contrary through its attorneys in the law suit consented to management of the utilities by the Board of Commissioners, we conclude the Board of Commissioners was the agent or instrument of the Board of Directors, the governing body of the city, in the general management of the utilities. The city could exercise its authority over the utilities only through some agent, and the Board of Commissioners acted as the administrative arm of the Board of Directors until after the chancery court had ruled on the validity and effect of the city ordinance passed in August, 1977. The Board of Directors took no steps to limit or control the Board of Commissioners in the management of the utilities until after the court ruling on November 10, 1977.

There is no suggestion of any fraud on the part of the Board of Commissioners incident to the contract in question, and since the evidence is not conflicting and there is no substantial evidence to support the city's claim to submit to the jury, the court did not err in directing a verdict for the appellee.

In *Chalmers & Son* v. *Bowen*, 112 Ark. 63, 164 S.W. 1131 (1914), it was held that where an agent is acting for his principal, he will be presumed to be a general agent, in the absence of notification to the contrary, and the burden is on the principal to show limitations as to the agent's authority.

The city continued to operate the utilities under the un-

ion contract above mentioned after the dissolution of the Board of Commissioners and it thereby ratified the union contract, along with the supplementary agreement evidenced by the Board of Commissioners' letter extending sick pay benefits under the contract to all utility employees, and the law recognizes that a city may ratify a contract that is within its powers to make, even though the contract in its inception may not have been entered into in strict keeping with statutory requirements. Although under the terms of the contract the city could have terminated the agreement at the end of two years from the date of the agreement by giving sixty days notice in advance, and the initial two year term of the contract had expired at time of trial, there is no indication the city terminated the contract. The comprehensive contract contained numerous provisions that can be fairly said to be beneficial to the city in the orderly operation of the utilities and in accepting those benefits the city ratified the contract. *City of Harrison* v. *Boone County*, 238 Ark. 113, 378 S.W. 2d 665 (1964); *Day* v. *City of Malvern*, 195 Ark. 804, 114 S.W. 2d 459 (1938); *Forrest City* v. *Orgill*, 87 Ark. 389, 112 S.W. 891 (1908).

In *L. C. Eddy, Inc.* v. *City of Arkadelphia*, 303 F. 2d 473 (1962), the court held the city, after accepting performance and enjoying benefits under a contract executed by its agent, could not avoid liability on the ground the contract was not authorized by resolution in writing approved by majority vote of the city council as required by Ark. Stat. Ann. § 19-2311 (Repl. 1980).

In 56 Am. Jur. 2d, Municipal Corporations, § 517, the general rule applicable to recovery of funds paid under an invalid contract is stated as follows:

> Where a county, municipality, or other political subdivision has accepted the benefits of an invalid contract under which public funds have been paid out, retains such benefits, and neglects or refuses to make any restitution thereof, or where the circumstances are such that a restoration of the benefits received would be impossible, there is a strong tendency among the courts to take the

view that the funds paid may not be recovered back by the municipality.

Obviously the city could not restore the variety of benefits flowing to it out of the comprehensive union contract, and it should not be permitted to accept and utilize the contract and reject parts of the agreement.

The 'mayor who was also a member of the Board of Directors testified he was aware of the union contract covering the utility employees, but he had not familiarized himself with it prior to June, 1978, although the records of the Board of Commissioners were available to the city prior to November 10, 1977.

The evidence of actions of the city constituting ratification of the contract is clear and there is no substantial evidence to the contrary. The appellee continued to work for the city several months after the chancery court had ruled the utilities were under the control of the Board of Directors, the union contract was being utilized and the city paid appellee sick leave benefits in keeping with the provisions of the union contract pursuant to the supplemental letter stating non-union employees would receive the contract benefits on the same terms as the union members. The check to appellee was signed by the office manager and by the assistant office manager of the utility department. At that time these officers were and had long been under the control of the Board of Directors.

Under the circumstances shown by the undisputed evidence we conclude the trial court did not err in directing a verdict in favor of the appellee denying recovery of benefits paid to appellee. Although the contract in question may well have been invalid at the time it was made for lack of specific authorization from the governing body of the city, the city by its actions ratified the contract and accepted the benefits thereunder. If the contract were ultra vires ratification might well not be applicable, but there is no suggestion the contract is outside the scope of the powers of the city.

We would point out this opinion is not to be construed as

prohibiting the city from cancelling the contract by giving sixty days written notice prior to the end of any two year term of the contract, as specifically provided in the contract, so long as rights of employees already vested at the time of cancellation are preserved.

Affirmed.