In re PLASMARC SYSTEMS, INC., Debtor.

Bankruptcy No. Bk–75–1364.

United States Bankruptcy Court, W. D. Oklahoma.

March 12, 1982.

Ted Houshouser, Oklahoma City, Okl., for debtor corporation.

Bill Pipkin, Moore, Okl., for the City of Moore.

### MEMORANDUM ORDER

DAVID KLINE, Bankruptcy Judge.

### STATEMENT

The debtor-complainant (hereinafter called Plasmarc) requests that the court

authorize it to remove a Plasma Arc Refuse Disintegrator (hereinafter called PARD) from realty owned by the City of Moore, Oklahoma (hereinafter called City). The City asserts ownership of the PARD, under the terms of a contract with Plasmarc's predecessor, Environmental Pollution Control Systems, Inc. (EPCS).

## ISSUES

(1) Does a ratification of an extension of a contract by a municipality, bind that municipality to the contract where the request for the extension does not formally comply with the original contract's terms.

(2) If the ratification of the contract extension is valid, does the filing of a Chapter X Bankruptcy Act voluntary petition for reorganization stay an executory contract's terms and provisions which deal with rights in the property which is the contract's subject.

## FACTS

1) On May 10, 1973 the debtor contracted with the City of Moore, Oklahoma, for a term of one year as follows:

¶2:

"The terms of test program will be for one year from the date of this contract. However EPCS shall have an option to extend this contract an additional one year. Should more time be desired by EPCS, it may only be extended at the option of THE CITY."

¶9:

"In the event THE CITY fails to exercise the option herein granted, EPCS shall remove from the test site any and all installations, improvements or structures made or constructed under any (sic) virtue of this Agreement within a period of one (1) year from and after the date of the termination of the testing program. Any installation, improvement or structure not removed within said one (1) year period shall be deemed to have been abandoned by EPCS and shall become the property of THE CITY."

¶12:

"This Contract and Agreement shall terminate one year from the date of execution, or at the completion of the testing program established in accordance with the provisions of Numerical paragraph 2 above, whichever shall first occur. Provided, however, that this Contract and Agreement may be extended beyond the termination date as herein defined by written agreement of the parties hereto entered into no less than thirty (30) days prior to the expiration thereof."

2) The debtor placed the PARD on the City's property. Currently the PARD is still on the property of the City although the PARD is not presently in use. On June 3, 1974 the City of Moore's City Council voted to extend the contract for one year.

3) A voluntary Chapter X petition was filed on July 2, 1975. No notice to the City was given either in the report of the debtor in possession, the proposed plan, or the schedules. The plan for reorganization was not confirmed and an amended plan has not been proposed. The chapter case was permitted to pend since the principal and only asset of value potentially was the patent right to said Refuge Disintegrator and all parties in interest urged continued case pendency.

## LAW

1) 11 Okla.Stat. (1971) § 568 in effect at the time of the original contract herein, provided in part:

"—All cities governed by the provisions of this Chapter shall be bodies corporate and politic, *and shall have the power* to sue and be sued, to purchase and hold real and personal property, for the use of the city, to sell and convey any real or personal property, owned by the city, and make such order respecting the same as may be conducive to the best interests of the city, *to make all contracts* and do all other acts *in relation to the property and affairs of the city*, necessary to the good government of the city, . . . ." (Emphases added)

2) For a binding agreement, formal contract execution is not necessarily re-

**308**

quired. *Garfielde v. U. S.*, 93 U.S. 242, 23 L.Ed. 779 (1876); *U. S. v. Purcell Envelope Co.*, 249 U.S. 313, 39 S.Ct. 300, 63 L.Ed. 620 (1918). As to a City's legal obligation to one who has performed his part of the contract, see *Trull v. City of Lobelville*, 554 S.W.2d 638 (Ct.App.Tenn.1976).

■■■ 3) Where a municipality has the capacity to make the contract *ab initio*, it can *ratify* the contract at a later point through requisite action by the city's governing body. *Baker v. Kelly*, 226 Ky. 1, 10 S.W.2d 467 (1928); *City of Benton v. Powers*, 601 S.W.2d 260 (Ct.App.Ark.1980). Read 11 Okla.Stat. (1971) § 568, (1981) § 22–101(4) as to contracting capacity. As mentioned in *National Surety Corp. v. City of Allentown*, 32 F.Supp. 700 (Pa.1939):

> " . . . a municipality may ratify a contract made by an unauthorized agent, and the ratification need not be express, but the acts relied on to establish it should be direct, explicit and unequivocal, with full knowledge of the facts and with the intent to recognize the validity of the obligation."

And as long as the contract is not illegal, the ratification is valid and binding. *Laramore & Douglass, Inc. v. City of Anderson, Ind.*, 222 F.2d 480 (CA 7 1955); *National Civil Service League v. City of Sante Fe, N. M.*, 370 F.Supp. 1128 (N.M.1973). And the records and minutes of the municipality are critical as to ratification. "It is a presumption of law that all public officers perform their duty, and in the absence of clear proof to the contrary, this court will refuse to hold that they did not so (perform) . . ." *Hamilton Township, Okmulgee County v. Underwood*, 198 P. 300 (Okl.1921). *City of Monticello v. Ragan*, 258 Ky. 223, 79 S.W.2d 720 (1935); *Hawkins v. City of West Point*, 27 So.2d 549 (Miss.1946). Understandably, if the authority of the municipality was lacking initially, then the ratification is void as a matter of law. *Greeley v. City of Evansville*, 128 F.2d 824 (CA 7 1942).

## EXECUTORY CONTRACTS

### Definition

*Collier on Bankruptcy* (14th Edition, 1976 ¶2.11, p. 326) defines "executory contracts":

"The definition in § 106(7) is not restrictive. The effective words are "shall include", and there is no exclusion of other meanings of the term "executory contracts", which embraces contracts dealing with any subject matter so long as some future performance is required of the debtor. Thus the fact that unexpired leases of *personal* property are not expressly named does not imply that such leases are excluded, since they are clearly "executory" contracts if unexpired at the date of the filing of the reorganization petition."

Court definitions include:

"Thus, where the contractual obligations of the bankrupt and the other contracting party remain at least partially and materially unperformed at bankruptcy, the contract is executory." (cites omitted) *Jenson v. Continental Financial Corp.*, 591 F.2d 477 (CA 8 1979).

"The court can allow a reasonable time to preserve the status quo so that the trustee can determine whether or not to adopt or reject an executory contract." *In Re United Cigar Stores of America*, 89 F.2d 3 (CA 2 1937). *Matter of Gulfco Investment Corp.*, 520 F.2d 741 (CA 10 1975).

### Power of Rejection

■ The Bankruptcy Act grants the debtor-in-possession the powers of a trustee (read in particular B.A. §§ 188, 189, 11 U.S.C. §§ 588, 589) with specific authority to accept or reject executory contracts. (B.A. § 202, 11 U.S.C. § 602). Moreover, this power of rejection is one of *business* not legal judgment. *In Re Tilco, Inc.*, 558 F.2d 1369 (CA 10 1977).

■■■ The filing of a petition in bankruptcy does not automatically terminate the bankrupt's obligations thereunder. Time is granted to make an appraisal of whether the estate's business interest is served by assumption or rejection. *Matter of Steelship Corp.*, 576 F.2d 128 (CA 8 1978); *Bank of America National Trust and Savings As-*

*sociation v. Smith*, 336 F.2d 528 (CA 9 1964). Yet, sensibly, a trustee by non-action, can be deemed "to have rejected the contracts and lease and to have relinquished whatever interest the estate had in those properties." *Danning v. Brunswich Corp.*, 466 F.2d 1010 (CA 9 1972) cert. denied, 409 U.S. 1126, 34 L.Ed.2d 257.

All rejection does is make the creditor a general creditor who is unsecured, but:

> "By virtue of § 202, any person injured by the rejection is deemed a creditor of the debtor holding a provable claim ..." *In Re Maryville Community Hospital, Inc.*, 456 F.2d 414 (CA 9 1972) cert. denied 409 U.S. 879, 34 L.Ed.2d 133. Accord *Matter of Minges*, 602 F.2d 38 (CA 2 1979).

In cases dealing with oil and gas field equipment the Oklahoma courts have stated:

> "Syllabus by the court—
> 1. Where an oil and gas lease authorizes the lessee to remove his fixtures "at any time," such right is not unlimited as to time, but the lessee is entitled to remove same within a reasonable time after expiration of the lease; and what is a reasonable time is to be determined from all facts and circumstances of each particular case." *Stevens v. Iverson*, 179 Okl. 401, 66 P.2d 12.
> "However, the well settled rule appears to be that if the machinery is not removed within a reasonable time after the termination of the lease, the equipment becomes the property of the landowner." (citations omitted) *Garr-Woolley v. Martin*, 579 P.2d 206 (Okl.App.1978).

### CONCLUSION

■ The initial contract herein was one which clearly fell within the contracting function of the City of Moore. And on June 3, 1974 the City of Moore effectively extended (through ratification) the terms thereof for an additional year. Under the contract's terms the debtor had one year from the expiration of the second year term to remove the PARD or count such "abandoned". Although Act authority doubtless granted the debtor reasonable time to accept and remove the PARD from the City's property, debtor's extended inaction must be deemed both a rejection of the executory contract and an abandonment of the controverted property. The City of Moore has the right to PARD both in law, and by virtue of laches.